UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA,

    -against-

ION CATALIN VRANCEA,

    Defendant.

-----------------------------------------------------------X

**DECISION AND ORDER**

12-cr-198 (WFK)

**KUNTZ, United States District Judge**

By Superseding Indictment filed December 20, 2012, Defendant Ion Catalin Vrancea ("Vrancea") is charged with (1) obstruction of justice, in violation of 18 U.S.C. § 1512(c)(1) ("Count One"); (2) destruction of evidence, in violation of 18 U.S.C. § 1519 ("Count Two"); (3) use of arson to commit obstruction of justice or destruction of evidence, in violation of 18 U.S.C. § 844(h)(1) ("Count Three"); (4) use of fire to damage real and personal property, in violation of 18 U.S.C. § 844(i) ("Count Four"); and (5) use of a false passport, in violation of 18 U.S.C. § 1543 ("Count Five"). Counts One through Four concern Defendant's destruction of evidence related to credit card skimming activities, including the use of fire to destroy evidence when Federal Bureau of Investigation ("FBI") agents arrested Defendant on February 16, 2012. Count Five concerns Defendant's use of false Romanian passports as identification to send money abroad using various money transfer services, to open a United Parcel Service ("UPS") mailbox, and to enter into a residential apartment lease. The Government moves *in limine* for this Court to admit at trial evidence that Defendant possessed a false identification card in the name "Iulian Ichim" when he entered the United States on March 1, 2011. The Government also seeks to

preclude Defendant from introducing into evidence his own exculpatory statements to FBI agents as they attempted to enter his residence on February 16, 2012, in the event the Government chooses not to introduce those statements. Mem. of Law in Supp. of Gov't's Mot. to Admit Certain Evidence against Def. at Trial and Preclude Def. from Introducing Exculpatory Statements, dated Dec. 18, 2012, Docket #44 ("Gov't's Mot."). For the reasons stated below, the motion of the Government is granted.

## BACKGROUND

According to the facts as presented by the Government in its Superseding Indictment and its other submissions on the record in this case, on March 1, 2011, Customs and Border Protection ("CBP") agents detained Defendant, along with eight other individuals, while they were attempting to enter the United States from Mexico without inspection near the Hidalgo, Texas Port of Entry. Compl., at ¶ 9. At the time of his entry, Defendant had a Romanian identification card bearing the name "Iulian Ichim." Gov't's' Mot., at 3. On March 2, 2011, CBP Officer Timothy Gonzales interviewed Defendant at the Border Patrol station at Fort Brown, Texas. During the interview, Defendant initially identified himself as "Iulian Ichim," with the date of birth March 6, 1984. Later, he stated his true name was Ion Catalin Vrancea, with the date of birth August 25, 1980. Defendant stated he purchased his false identification in Romania. Defendant stated that, prior to entering the United States, he spent ten days in Mexico City, Mexico, after which he traveled to Reynoso, Mexico. Defendant also stated he had relatives in the United States who lived at 7313 El Domino Way, Apartment 1, Buena Park, California, 90620.

The Government has stated its intends to prove that, on multiple occasions between February 25, 2011 and August 1, 2011, an individual using a Romanian passport bearing the

name "Iulian Ichim" transferred money via Western Union and Moneygram from various locations in Mexico and California to individuals located abroad. Gov't's' Mot., at 4. Specifically, between May 21, 2011 and August 1, 2011, an individual using a Romanian passport bearing the name "Iulian Ichim" made eight money transfers from various street addresses on El Domino Way in Buena Park. In at least two of the transactions, surveillance cameras allegedly captured an image of Defendant executing the money transfer.

Finally, the Government has stated it intends to show that on the morning of February 16, 2012, FBI agents arrived at Defendant's residence at 31-76 37th Street, Apartment 2B in Astoria, New York, at approximately 6:00 a.m. to arrest Defendant pursuant to a warrant. *See* Arrest Warrant, Docket #2. The agents allegedly knocked on the door and announced themselves. Gov't's' Mot., at 5. The agents then used a ramming device to open the door, but because of a metal latch on the door, were only able to create an opening of several inches. The agents asked Defendant to open the door. Defendant responded "I can't." The agents did not observe Defendant attempt to open the door. At some point, the agents smelled smoke and observed black smoke coming into the hallway from Defendant's apartment. The agents called 9-1-1 and requested the assistance of firefighters. During this time, an agent stationed at the back of the apartment building saw Defendant open the back window of the apartment. The agent instructed Defendant to open the door. Defendant responded "I can't." The agent again instructed Defendant to open the door, and Defendant responded by stating something that was unintelligible to the agent.

Firefighters arrived on the scene and opened the door to the apartment using an electric saw. The agents were able to locate and apprehend Defendant and a female who was also inside the apartment. Once the smoke cleared, the agents observed various pieces of electronic

3

equipment and other items scattered throughout the apartment that appeared to have been tampered with in an attempt to destroy the items.

## ANALYSIS

I. **Evidence Regarding Count Five Of The Indictment**

   A. **Legal Standard**

The Federal Rules of Evidence prohibit admission of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). The Rule, however, does permit such evidence "for another purpose, such as proving of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* The Supreme Court has held that similar acts evidence may be admissible, provided that: (1) the prior acts evidence is offered for a proper purpose; (2) the evidence is relevant to a disputed issue; (3) the probative value of the prior act evidence is not substantially outweighed by the danger of its unfair prejudice; and (4) the court administers an appropriate limiting instruction. *Huddleston v. United States*, 485 U.S. 681, 691–92; *United States v. Brand*, 467 F.3d 179, 196 (2d Cir. 2006). Prior acts evidence may be admitted where it is "necessary to complete the story of the crime on trial and thus, appropriately treated as part of the very act charged, or at least, proof of that act." *United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007) (internal citations and quotations omitted). Additionally, courts have permitted the admission of evidence of other crimes to establish a recurring *modus operandi*. *United States v. Sliker*, 751 F.2d 477, 487 (2d Cir. 1984). This "inclusionary approach" allows the district court to admit evidence of other wrongs so long as it is relevant and is not offered to prove criminal propensity. *See United States v. Lasanta*, 978 F.2d 1300, 1307 (2d Cir. 1992).

4

When the government seeks to introduce such extrinsic evidence, the district court must first determine whether it is admissible under Rule 404(b). If so, it must then determine whether the probative value of the evidence is substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 403. If the court rules the evidence is admissible, the court must give a limiting instruction. Fed. R. Evid. 105. Broad discretion resides in the district court regarding the admissibility of evidence of extrinsic acts, and its decision will not be reversed on appeal absent an abuse of discretion. *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996).

### B. Application

Evidence that Defendant previously used a false passport in the name "Iulian Ichim" at the time of his entry into the United States on March 1, 2011 is admissible under Rule 404(b) because it is not offered to show that Defendant did, in fact, commit a past crime. Rather, Defendants's possession of a false, Romanian identification card and statements made to the CBP officer during the March 2, 2011 interview are directly relevant to Count Five and complete the story of the acts alleged in Count Five. The Government correctly points out that such evidence "makes it more likely that the defendant was the individual who used a false Romanian passport bearing the exact same identifiers—i.e., the name "Iulian Ichim" and date of birth "March 6, 1984"—to transfer money" to locations abroad during the period February 25, 2011 to August 1, 2011. Gov't's' Mot., at 10.

Additionally, evidence is admissible under Rule 404(b) to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Here, the Government stated it intends to establish that Defendant had the requisite knowledge to procure false identification and possessed the opportunity to obtain false identification cards. The evidence is sought to demonstrate Defendant's intent and plan present

5

himself falsely as "Iulian Ichim." The proffered evidence directly bears upon the charged conduct insofar as it makes it more likely that Defendant had the ability to acquire and use false identification and because it supports the Government's allegations that Defendant transferred money via Western Union and Moneygram using a false passport.

Finally, the Court finds that the probative value of the proffered evidence far exceeds the prejudicial effect under Rule 403, and the evidence therefore will be admitted under a proper limiting instruction if such is requested. *See* Fed. R. Evid. 403; *see also United States v. Baez*, 349 F.3d 90, 93–94 (2d Cir. 2003); *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (finding that evidence admitted was not unfairly prejudicial because it "did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged").

## II. Evidence Of Defendant's Own Exculpatory Statements

### A. Legal Standard

Rule 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." In general, hearsay statements are inadmissible at trial. Fed. R. Evid. 802. Rule 801(d)(2)(A) provides, however, that a party's own statement, if offered against him, is not hearsay.

The government may offer a prior statement of the defendant to establish the truth of the matter asserted under Rule 801(d)(2)(A), because it is a statement of the opposing party. The government may also offer the statement to "show that the defendant made false representations to authorities, from which the jury could infer a consciousness of guilt, and hence guilt." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982). In this situation, the statement is not being

offered for the truth of the matter asserted, but for another purpose and is, therefore, non-hearsay under Rules 801(c) and 801(d)(2)(A).

However, "[w]hen the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *Id.* When the defendant offers his own statement simply to show that it was made, rather than to establish the truth of the matter asserted, the statement must be relevant to the issues of the case. *United States v. Wise*, 125 F.3d 845 (2d Cir. 1997); *United States v. Demosthene*, 334 F. Supp. 2d 378, 381 (S.D.N.Y. 2004) (Marrero, J.). Under this rubric, self-serving and exculpatory statements are inadmissible hearsay and may not be introduced by the defendant at trial.

### B. Application

The Government seeks to preclude the cross-examination of its witnesses with respect to Defendant's exculpatory statements made during his arrest on February 16, 2012 regarding his inability to open the door to his residence when instructed to do so by FBI agents. The Court grants the Government's motion *in limine* to preclude Defendant from introducing the statements in the event the Government chooses not to introduce these statements in its case-in-chief. The exculpatory statements that Defendant could not open the door at the time of his arrest on February 16, 2012 are inadmissible hearsay when introduced by Defendant.

## CONCLUSION

The proposed evidence with respect to Count Five the Government seeks to admit is admissible for several purposes other than to show Defendant's criminal propensity, and the evidence admitted involves conduct similar to the crime charged in Count Five. Accordingly, the Government's motion *in limine* to admit at trial evidence that Defendant possessed a false identification card in the name "Iulian Ichim" when he entered the United States on March 1,

7

2011 is granted. Additionally, the Court grants the Government's motion *in limine* to preclude Defendant from introducing exculpatory statements made during his arrest on February 16, 2012 because they are inadmissible hearsay.

**SO ORDERED**

Dated: Brooklyn, New York
       January 4, 2013

s/WFK

_____
HON. WILLIAM F. KUNTZ, II
United States District Judge